UNITED STATES v. DAVIS. See Cases Nos. 3,621a and 14,820.

---

## Case No. 14,933.

UNITED STATES v. DAWSON et al.

[Hempst. 643.] [1]

Circuit Court, D. Arkansas. April 28, 1853.

COURTS—DISTRICT OF ARKANSAS—INDIAN COUNTRY —STATUTE—CRIMINAL JURISDICTION—INDICTMENT PENDING.

1. Persons indicted in 1845 in the circuit court of the United States for the district of Arkansas, for a felony committed in the Indian country west of Arkansas, and which territory was transferred to the Western district of Arkansas by the act of 3d March, 1851 (9 Stat. 594), are subject to be tried in the court where the indictment was found, and the court in the Western district has no jurisdiction.

2. That act did not deprive the court where an indictment was pending, of the right to try and determine the same.

Indictment for murder.

The indictment was as follows, namely:— "The United States of America, District of Arkansas, ss.: In the circuit court of the United States, begun and holden within and for the district of Arkansas aforesaid, at the April term thereof, A. D. 1845. The grand-jurors of the United States of America duly elected, impanelled, sworn, and charged to inquire within and for the body of the district of Arkansas aforesaid, upon their oath, present, that James L. Dawson, who is a white man, and not an Indian, late of said district, on the 8th day of July, in the year of Christ, eighteen hundred and forty-four, with force and arms, in that part and portion of the Indian country west of the Mis-

[1] [Reported by Samuel H. Hempstead, Esq.]

sissippi river that is bounded north by the north line of lands assigned to the Osage tribe of Indians, produced east to the state of Missouri, west by the Mexican possessions, south by Red river, and east by the west line of the now states of Arkansas and Missouri (the same being territory annexed to the district of Arkansas, for the purposes in the act in that behalf made and provided,) namely, in the district of Arkansas aforesaid, and within the jurisdiction of this honorable court, in and upon one Seaborn Hill, who was a white man and not an Indian, feloniously, wilfully, and of his malice aforethought, did make an assault; and that the said James L. Dawson, a certain pistol of the value of five dollars, then and there loaded and charged with gunpowder and one leaden bullet, which pistol the said James L. Dawson, in his right hand, then and there had and held at, to, against, and upon the said Seaborn Hill, then and there feloniously, wilfully, and of his malice aforethought, did shoot and discharge; and that the said James L. Dawson, with the leaden bullet aforesaid, out of the pistol aforesaid, then and there, by force of the gunpowder and shot sent forth as aforesaid, the said Seaborn Hill in and upon the left breast of him the said Seaborn Hill, a little below the left pap of him the said Seaborn Hill, then and there feloniously, wilfully, and of his malice aforethought, did strike, penetrate, and wound, giving to the said Seaborn Hill then and there with the leaden bullet aforesaid, so as aforesaid shot, discharged, and sent forth out of the pistol aforesaid by the said James L. Dawson, in and upon the left breast of him the said Seaborn Hill, a little below the left pap of him the said Seaborn Hill, one mortal wound of the depth of six inches, and of the breadth of half an inch, of which mortal wound the said Seaborn Hill then and there instantly died. And the jurors aforesaid, upon their oaths aforesaid, do further present, that John R. Baylor, yeoman, who is a white man, and not an Indian, late of said district, on the day and year aforesaid, with force and arms, in the Indian country west of Arkansas, that is to say, in the Indian country bounded and described as aforesaid, and within the jurisdiction of this court, namely, in the district aforesaid, feloniously and wilfully, and of his malice aforethought, was present, aiding, abetting, and assisting the said James L. Dawson, the felony and murder aforesaid, in manner and form aforesaid, to do and commit, and so the jurors aforesaid, upon their oath aforesaid, do say that the said James L. Dawson and John R. Baylor, the said Seaborn Hill, in manner and form aforesaid, feloniously, wilfully, and of their malice aforethought, did kill and murder, contrary to the form of the statute in that behalf made and provided, and against the peace and dignity of the United States of America aforesaid, and this indictment is founded on the testimony of

witnesses sworn to testify before the grand-jury. S. H. Hempstead, Attorney of the U. States, for the Dist. of Arkansas.

"A true bill. P. T. Crutchfield, foreman of the grand-jury.

"Filed April 16th, 1845. Wm. Field, Clerk, by A. H. Rutherford, D. C."

Dawson was arrested on the 8th day of November, 1852, in Texas, by the marshal thereof, on process issued on the indictment, and was delivered to Luther Chase, the marshal of the Eastern district of Arkansas, on the 24th of November, 1852, and was from thenceforward confined in the jail of Pulaski county. John R. Baylor was never arrested.

On the 23d day of December, 1852, Dawson presented to the Hon. DANIEL RINGO, district judge at chambers, a petition for a habeas corpus, setting out the indictment, and his commitment under it, and insisting that all jurisdiction over the case totally ceased after the passage of the act of the 3d of March, 1851, creating a Western district of Arkansas and attaching the Indian country, where this offence was alleged to have been committed to the court of that district; and praying to be discharged from imprisonment.

Joseph Stilwell, U. S. Dist. Atty.

Albert Pike, E. Cummins, and E. H. English, for Dawson.

Before DANIEL, Circuit Justice, and RINGO, District Judge.

RINGO, District Judge. On hearing the petition of James L. Dawson, praying a writ of habeas corpus and discharge from imprisonment, and upon hearing the argument of counsel thereupon, as well on behalf of the prisoner as of the United States, it appears by the showing of petitioner that he stands charged by indictment in the circuit court of the United States for the district of Arkansas with the crime of murder, committed in the Indian country, on a white person, on the 8th day of July, A. D. 1844, within the limits of that part of the Indian country then attached to that district;—that this indictment was in due form found by the grand-jury impanelled and sworn in the circuit court, at the April term thereof, A. D. 1845, and by the jury returned and delivered into court as a true bill, on the 16th day of April, A. D. 1845, and then filed; that writs of capias founded thereupon, for his arrest to answer the United States on said charge have been from time to time by order of court issued thereout, and that the prosecution is still pending: that on and by virtue of one of the writs of capias, issued in due form, bearing date the 20th day of May, A. D. 1852, addressed to the marshal of the district of Texas, and returnable to said court at the April term thereof, 1853, petitioner was on the 8th day of November, 1852, arrested in the state and district of Texas, by a deputy of the marshal of the district of Texas, by whom he was thence conveyed to the district of Arkansas, and on the 24th day of November, turned over and delivered into the custody of Luther Chase, "marshal of the United States for the Eastern district of Arkansas, and by him committed to the jail of Pulaski county in the last-named district, where he has ever since remained and still is imprisoned, to answer to said indictment; and that no cause, other than said charge, indictment, capias, and proceedings exists, or ever did exist for his imprisonment and detention in custody. He therefore claims the benefit of the writ of habeas corpus, and that upon the hearing he may be discharged from imprisonment and custody, on the ground that this court is not possessed of jurisdiction of the crime, because the same if committed, was committed at a place not now within its jurisdiction, the place where said crime is charged to have been committed, being in that part of the Indian country, which by act of congress of March 3, 1851, dividing the district of Arkansas, is attached to the Western district of Arkansas for which a separate district court was by said act created and vested with all the jurisdiction and powers of a circuit court, without any reservation to said circuit court of jurisdiction of any crimes previously committed within the limits of said Western district, or the Indian country attached thereto, or any transfer of any prosecution, or case, then pending in the circuit court, to any other court, and without any provision for the trial of such crimes in the district court for the Western district. Wherefore he insists he is legally discharged from any prosecution for said crime, no court possessing the power to punish offences committed in the Indian country now attached to said Western district committed prior to the creation thereof by the division of said Arkansas district, and is now illegally imprisoned and held in custody to answer the said indictment.

I am not satisfied that by the division of the district, and the attaching of the place and Indian country where the crime is charged to have been committed, to the Western district of Arkansas, the jurisdiction of the circuit court over the crime, and the prosecution thereof were divested, or that this court notwithstanding does not possess ample jurisdiction thereof, and may lawfully proceed to try and punish in such case although the place where the crime was committed, if committed at all, is not now within, or attached to, the Eastern district of Arkansas and within which the place, where by law the circuit court is required to hold its sessions, is situated, and inasmuch as the crime charged against the petitioner is a felony, and no sufficient ground for his discharge from imprisonment is shown, admitting all of the facts to be true, as stated in his petition, (with which is exhibited a duly certi-

ed copy of the indictment and writ of capias, with the return thereto of the marshal above mentioned,) the prayer of the petition is denied.

At the April term, 1853, a motion was made by Dawson, to quash the indictment on the same ground set out in the petition, namely, that the act of 3d March, 1851, creating a court in the Western district of Arkansas, had the effect of destroying the jurisdiction of this court over the case.

This motion was argued, before DANIEL, Circuit Justice, and RINGO, District Judge. Joseph Stilwell, U. S. Dist. Atty. A. Pike, E. Cummins, and E. H. English, for Dawson. Upon this motion the judges differed in opinion and certified two questions to the supreme court, which are stated in the decision of that court, hereafter introduced.

Dawson applied for bail, but the court on hearing the testimony refused his application.

NOTE. The case in the supreme court was argued at the December term, 1853, Mr. Cushing, Atty. Gen., for the United States; and Mr. Lawrence and Mr. Pike, for Dawson; and will be found reported in 15 How. [56 U. S.] 467–494.

Mr. Justice NELSON delivered the opinion of the supreme court:

The defendant was indicted in the circuit court of the United States for the district of Arkansas, for the alleged murder of one Seaborn Hill, in the Indian country west of the state of Arkansas. The defendant is a white man and so was Hill, the deceased.

At a circuit court held at the city of Little Rock, on the 28th of April, 1853, the indictment came on for trial before the judges of that court; whereupon a motion was made on behalf of the defendant, to quash the indictment for want of jurisdiction of the court to try the same. And upon the argument, the judges being divided in opinion, the following question was certified to this court for its decision:—

1. Did the act of congress, entitled "An act to divide the district of Arkansas into two judicial districts," approved the 3d of March, 1851, by which the Western district of Arkansas was created, take away the power and jurisdiction of the circuit court of the United States for the Eastern district of Arkansas, to try the indictment pending against the prisoner, James L. Dawson, a white man, found in the circuit court of the United States for the district of Arkansas, by a grand-jury impanelled on the 16th of April, 1845, for feloniously killing Seaborn Hill, a white man, on the 8th of July, 1844, in the country belonging to the Creek Nation of Indians west of Arkansas, and which formed a part of the Indian country annexed to the judicial district of Arkansas by the act of congress, approved on the 17th of June, 1844 [5 Stat. 680], entitled "An act supplementary to the act entitled 'An act to regulate trade and intercourse with the Indian tribes and to preserve peace on the frontiers,'" passed 30th June, 1834 [4 Stat. 729].

To state the question presented for our decision in a more simple form, it is this: At the time the state of Arkansas composed but one judicial district in which the federal courts were held, the Indian country lying west of the state was annexed to it for the trial of crimes committed therein by persons other than Indians. In this condition of the jurisdiction of these courts, the crime in question was committed in the Indian country, and the indictment found in the circuit

court at the April term, 1845, while sitting at the city of Little Rock, the place of holding the court.

Subsequent to this the state was divided into two judicial districts, the one called the Eastern and the other the Western district of Arkansas. The Indian country was attached to, and has since belonged to the Western district. The question presented for our decision is, whether or not the circuit court for the Eastern district is competent to try this indictment, since the change in the arrangements of the districts.

By the 24th section of the act of congress, June 30, 1834 (4 Stat. 733), it was provided that all that part of the Indian country west of the Mississippi river, bounded north by the northern boundary of lands assigned to the Osage tribe of Indians, west by the Mexican possessions, south by Red river, and east by the west line of the territory of Arkansas and state of Missouri, should be annexed to the territorial government of Arkansas for the sole purpose of carrying the several provisions of the act into effect. And the 25th section enacted, that so much of the laws of the United States as provides for the punishment of crimes committed within any place within the sole and exclusive jurisdiction of the United States, shall be in force in the Indian country, provided the same shall not extend to crimes committed by one Indian against the person or property of another Indian. The act of congress of June 7th, 1844 (5 Stat. 680), which was enacted after the territory of Arkansas became a state, provided that the courts of the United States for the district of Arkansas should be vested with the same power and jurisdiction to punish crimes committed within the Indian country, designated in the 24th section of the act of 1834, and therein annexed to the territory of Arkansas, as were vested in the courts of the United States for said territory before the same became a state; and that for the sole purpose of carrying the act into effect, all that Indian country theretofore annexed by said 24th section to the said territory, should be annexed to the state of Arkansas.

As we have already stated, the crime in question was committed in this Indian country, after it was annexed for the purposes stated, to the state of Arkansas; and the indictment was found in the circuit court of the United States for the district of Arkansas, which we have seen was coextensive with the state. And if no change had taken place in the arrangement of the district before the trial, there could of course have been no question as to the jurisdiction of the court. But by the act of congress 3d March, 1851, it was provided that the counties of Benton and eight others enumerated, and all that part of the Indian country annexed to the state of Arkansas for the purposes stated, should constitute a new judicial district, to be styled "The Western district of Arkansas," and the residue of said state shall remain a judicial district, to be styled "The Eastern district of Arkansas." The 2d section provides, that the judge of the district court shall hold two terms of his court in this Western district in each year at Van Buren, the county seat in Crawford county. And the third confers upon him, in addition to the ordinary powers of a district court, jurisdiction within the district of all causes, civil or criminal, except appeals and writs of error which are cognizable before a circuit court of the United States. The fourth provides for the appointment of a district attorney and marshal for the district, and also for a clerk of the court.

It will be seen, on a careful perusal of this act, that it simply erects a new judicial district out of nine of the western counties in the state, together with the Indian country, and confers on the district judge, besides the jurisdiction already possessed, circuit court powers within the district, subject to the limitation as to appeals and writs of error; leaving the powers and jurisdiction of the circuit and district courts, as they existed in the remaining portion of the state,

untouched. These remain and continue within the district after the change, the same as before; the only effect being to restrict the territory over which the jurisdiction extends. Hence no provision is made as to the time or place of holding the circuit or district courts in the district, or in respect to the officers of the courts, such as district attorney, marshal, or clerk, or for organizing the courts for the despatch of their business. These are all provided for under the old organization. 5 Stat. 50, 51, 176, 177, 178.

We do not, therefore, perceive any objection to the jurisdiction of these courts over cases pending at the time the change took place, civil and criminal, inasmuch as the erection of the new district was not intended to affect it in respect to such cases, nor has it in our judgment necessarily operated to deprive them of it.

It has been supposed that a provision in the sixth amendment of the constitution of the United States has a bearing upon this question, which provides that, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." The argument is, that since the erection of the new district out of the nine western counties in the state, together with the Indian country, it is not competent for the circuit court, in view of this amendment, to try the prisoners within the remaining portion of the old district, inasmuch as that amendment requires that the district within which the offence is committed, and the trial to be had, shall be ascertained and fixed previous to the commission of the offence. But it will be seen from the words of this amendment, that it applies only to the case of offences committed within the limits of a state; and whatever might be our conclusion, if this offence had been committed within the state of Arkansas, it is sufficient here to say, so far as it respects the objection, that the offence was committed out of its limits, and within the Indian country. The language of the amendment is too particular and specific to leave any doubt about it. "The accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall be committed, which district shall have been previously ascertained by law."

The only regulation in the constitution, as it respects crimes committed out of the limits of a state, is to be found in article 3, § 2 of the constitution, as follows:—"The trial of crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as the congress may by law have directed." Accordingly, in the first crimes act, passed April 30, 1790, § 8 (1 Stat. 114), it was provided, that "the trial of crimes committed on the high seas, or in any place out of the jurisdiction of any particular state, shall be in the district where the offender is apprehended, or into which he may be first brought." A crime, therefore, committed against the laws of the United States, out of the limits of a state, is not local, but may be tried at such place as congress shall designate by law. This furnishes an answer to the argument against the jurisdiction of the court, as it respects venue, trial in the county, and jury from the vicinage, as well as in respect to the necessity of particular or fixed districts before the offence. These considerations have no application or bearing upon the question.

In this case, by the annexation of the Indian country to the state of Arkansas, in pursuance of the act of 1844 for the punishment of crimes committed in that country, the place of indictment and trial was in the circuit court of the United States for that state in which the indictment has been found and was pending in 1851, when the Western district was set off; and as

that change did not affect the jurisdiction of the court as it respected pending cases, but remained the same after the alteration of the district as before, it follows that the trial of the indictment in this court will be at the place and in the court as prescribed by law, which is all that is required in the case of an offence committed out of the limits of a state.

We shall direct, therefore, an answer in the negative to be certified to the court below to the first question sent up for our decision, as we are of opinion the court possesses jurisdiction to hear and give judgment on the indictment.

The second question sent up in the division of opinion is as follows:—Can the district court of the United States for the Western district of Arkansas take jurisdiction of the case aforesaid, so found in the year 1845, in said circuit court for the district of Arkansas?

As our conclusion upon the first question supersedes the necessity of passing upon the second, it will be unnecessary to examine it, and we shall therefore confine our answer and certificate to the court below to the first.

Mr. Justice McLEAN, dissenting.

The facts and law of this case, as I understand them, have led me to a different conclusion from that of a majority of the court. The 24th section of the act of the 30th June, 1834, after making various provisions defining the limits of the Indian country, and imposing penalties for several offences by white persons, provides, "that for the sole purpose of carrying this act into effect, the Indian country bounded east by Arkansas and Missouri, west by Mexico, north by the Osage country, and south by Red river, shall be, and hereby is, annexed to the territory of Arkansas." On the 8th of July, 1844, a murder was committed at the Creek agency, in the Creek country west of Arkansas, for which the grand-jury found a bill of indictment in the circuit court of Arkansas at April term, 1845. By an act of March 3, 1851, it is provided, "that from and after the passage of this act the counties of Benton, Washington, Crawford, Scott, Polk, Franklin, Johnson, Madison, and Carroll, and all that part of the Indian country lying within the present judicial district of Arkansas, shall constitute a new judicial district, to be styled the Western district of Arkansas; and the residue of said state shall be and remain a judicial district, to be styled the Eastern district of Arkansas."

After the division of the district, Dawson the defendant was arrested for the alleged murder; and the question whether the circuit court of the United States sitting within the Eastern district has jurisdiction to try the case, has been referred to this court. When the offence was committed and the indictment was found, the district of Arkansas included the state and the Indian country described; but when the defendant was arrested and the case was called for trial, the district had been divided; and the question is raised in the Eastern district, the murder having been committed in the Western. In the act dividing the district, congress had power to provide that all offences committed in the district before the division should be tried in the Eastern district. But no such provision being made, the question is, whether the jurisdiction may be exercised in that district without it. Since the division of the district, capital punishments have been inflicted in the Western district for offences committed before the division. This deprived the accused of no rights which they could claim under the constitution of the United States or the laws of the Union. The sixth article of the amendment to the constitution declares, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." As the state and district are connected by the copulative conjunction in this provision,

the case before us is not technically within it. The crime is alleged to have been committed within the Indian country which the district includes; but it is not within the state. But the case appears to me to be within the policy of the provision. Nine counties of the state of Arkansas are within the district, and from which the jury to try the defendant might be summoned. This brings the case substantially within the above provision. Had the place of the murder been within one of the above counties, the constitutional provisions must have governed the case. All the rights guaranteed by the constitution would have been secured to the criminal by a trial in the Western district; but those rights are not realized by him on a trial in the Eastern district. And that is made the place of trial because the alleged murder was not committed within the state.

In the 2d section of the 3d article of the constitution it is declared that "the trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the state where the said crimes shall have been committed; but when not committed within any state, the trial shall be at such place or places as congress may by law have directed." The latter clause of this provision covers the case now before us. The crime charged was not committed within any state; but it was committed within a district, within which such offences are to be tried as "directed by congress." And there seems to me to be no authority to try such an offender in any other district or at any other place. The act of 1834 provides that an offender under the act, when arrested, shall be sent for trial to the district where jurisdiction may be exercised. The punishments inflicted in the Western district of Arkansas for crimes committed before the division of the district, were in accordance with the above provision of the constitution and the principles of the common law, both of which are opposed to a trial of the same offences in the Eastern district. The tribunal is the same in both districts, except the circuit judge may not be bound to attend the Western district; but the Western district includes the place of the crime, which by the laws of England and of this country is the criterion of jurisdiction in criminal cases. This is never departed from where the limits of the jurisdiction are prescribed.

On what ground can jurisdiction be exercised in the Eastern district? Not, I presume, on the ground that the crime was committed before the district was divided. If this be assumed and sustained, the capital punishments which have been inflicted in the Western district for similar offences have been without authority. The offenders have been tried and they have had substantially the benefits secured by the constitution. They have had a jury from the district and as near the vicinage as practicable. These privileges they would not have realized had they been tried in the Eastern district. If tried in the Eastern district the jury must have been summoned from that district, and not from the district in which the offence was committed. The considerations in favor of the Western district as the legal place of trial, greatly outweigh, it seems to me, any that can arise in favor of the Eastern district.

There is, however, a fact which may be supposed of great weight in deciding the question; and that is, the indictment was found before the division of the district. I will examine this. It is admitted the jurisdiction was in the circuit court for the entire district when the indictment was found. This gave jurisdiction; but every step taken in the cause subsequent to the finding of the bill, is as much the exercise of jurisdiction as the finding of the bill. The establishment of the Western district in effect repealed the jurisdiction of the Eastern district as to causes of action arising in the Western district as fully as if the law had declared "no jurisdiction shall hereafter be taken in any case, civil or criminal, which is of a local character and

arises in the Western district." Offences committed in that district are made local by the acts of congress. This is not a case where, if jurisdiction once attaches, the court may finally determine the matter. There seems to me to be no reason for such a rule in a criminal case, especially when it is opposed to the policy of the constitution and to the principles of the common law.

A case lately decided in this court may have some bearing on this question. Under the fugitive slave law of 1793 [1 Stat. 302], certain penalties were inflicted for aiding a fugitive from labor to escape. A number of actions were brought in several of the states—in Ohio, Indiana, and Michigan—for the recovery of this penalty; but it was set up in defence that this penalty was repealed by repugnant provisions in the law of 1850 [9 Stat. 462], on the same subject, and this court so held. The actions which had been pending for years were stricken from the docket. But it may be said the repeal in the case stated operated on the right of action. This is admitted. And so it may be said the Western district was repugnant to the Eastern, so far as causes of local actions arise in the Western district; and is not this repugnancy as fatal to the trial, as the repeal of the penalty in the act of 1793? All this difficulty arises from an omission of congress to make in the law dividing the district, the necessary provision; and it appears to me we have no power by construction or otherwise to supply the omission. This could not be done in an action of ejectment. A writ of possession in such a case could not be issued to the Western district on a judgment entered in the Eastern. And if such jurisdiction could not be sustained in a civil action, much less can it be sustained in a criminal case.

If a person guilty of a crime in the Indian country before the division, could not be indicted and tried in the Eastern district, it follows that the fact of the crime having been committed in the Indian country can afford no ground of jurisdiction in the present case. It must rest alone then, it would seem, for jurisdiction on the ground that the indictment having been found in the Eastern district, the same jurisdiction may try the defendants, and if found guilty sentence them to be executed. This view must overcome the locality of the crime, and the right which the defendants may claim to have, a jury as near the vicinage as practicable, at least a jury from the district where the crime was committed. These appear to me to be objections entitled to great consideration. A jurisdiction in so important a case should not be maintained under reasonable doubts of its legality.

The cases referred to in the argument to retain the jurisdiction, do not, as it appears to me, overcome the objections. Numerous instances are cited where the territory of a judicial district has been changed, provision being made in the act that the jurisdiction should be continued where suits had been commenced. This shows the necessity of such a provision, and is an argument against the exercise of the jurisdiction where no provision has been made. And in those cases like the present, where a district has been changed without any provision as to jurisdiction, there is no exercise of it shown in a criminal case, especially where the punishment is death. Where jurisdiction attaches from citizenship of the parties, a change of residence does not affect the jurisdiction. The case of Tyrell v. Roundtree, 7 Pet. [32 U. S.] 464, seems to have no bearing upon this question. That action was commenced by an attachment, which was laid upon the land before the division of the county; and this court said the land remained in the custody of the officer subject to the judgment of the court. An interest was vested in him for the purposes of that judgment. The judgment was not a general lien on it, but was a specific appropriation of the property itself. And they say a division of the county could not divert this vested interest, or deprive the officer of power to

finish a process which was rightly begun. There may be cases where counties have been divided after jurisdiction was taken in a local action, and the suit has been carried into judgment; but such cases afford no authority in the present case.

In the case relied upon as in point, Rhoades v. Selin [Case No. 11,740], the court said: "At the first or second session of this court, which succeeded the passage of the act of 1824, which added this and other counties to the Western judicial district, we were called upon to decide whether the present action, together with some others then on our docket for trial, together with the papers belonging to them, should be sent to the Western district or retained here. After hearing counsel on the question the opinion of the court was that those cases were not embraced either by word or the obvious intention and policy of the act." This does not appear to be a well considered case. The counties were annexed to another jurisdiction, and yet the court speak of "the obvious intention and policy of the act;" and on that ground entertain jurisdiction over cases pending in the former district. This was right in regard to transitory actions; but not where the actions were of a local character.

Ordered to be certified that the circuit court of the United States for the Eastern district of Arkansas had jurisdiction to hear, try, and determine the indictment. [15 How. (56 U. S.) 467.]

At the April term, 1855, the case was tried before the Hon. DANIEL RINGO, district judge, holding the circuit court; absent the Hon. PETER V. DANIEL, associate justice of the supreme court of the United States.

J. W. McConaughey, Dist. Atty., and M. Quail, for the United States.

Albert Pike and S. W. Williams, for the prisoner.

The jury returned a verdict of guilty of manslaughter, and recommended Dawson to the mercy of the court. And the court subsequently pronounced sentence, which was, that the said Dawson should be imprisoned for the space of two years in the common jail of Pulaski county in the state of Arkansas. The case as to John R. Baylor was continued. Upon a petition very numerously signed, Dawson was pardoned by President Pierce, in the summer of 1855.